IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARREN CHRISTOPHER ANDERSON,
     Plaintiff,

vs.                                Case No: 3:07cv45/RV/EMT

W.D. RUMMEL, M.D., et al.,
     Defendants.
_____/

**<u>ORDER</u>**

     This cause is before the court upon Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. §1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 5). From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or both of the named Defendants. Therefore, the court will allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

     Plaintiff has named two Defendants: W.D. Rummel, M.D., Chief Medical Doctor at Santa Rosa Correctional Institution (SRCI), and Nurse Nichols, a nurse at SRCI (Doc. 1 at 1, 2). Plaintiff alleges that upon his arrival at SRCI on August 15, 2006, he informed a nurse that he suffered from migraine headaches and requested medication (*id.*, Statement of Facts ¶¶ 6, 7). Two days later, a nurse told him that she had informed a doctor of his request, and a prescription had been ordered (*id.* ¶ 8). Three days later, Plaintiff received medication (*id.* ¶ 9).

     On August 23, 2006, Plaintiff was transferred to another dormitory (*id.* ¶ 9). Plaintiff inquired with a nurse about his medication, and she told him that he did not have a prescription (*id.* ¶¶ 11, 12). Plaintiff submitted a request for sick call on September 4, 2006, and was seen by Nurse Nichols on September 6, 2006 (id. ¶¶ 13, 14). Nurse Nichols prescribed a new medication, but three weeks later, the headaches were worse to the point that Plaintiff could not keep food down (*id.* ¶¶

14, 15).  Plaintiff was again seen by Nurse Nichols on September 27, 2006, and in response to Plaintiff's complaint that the headaches were worse, Nurse Nichols told him to give the medication time to work (*id*. ¶ 16).  Five days later, on October 2, 2006, Plaintiff submitted a request for sick call and was again seen by Nurse Nichols (*id*. ¶ ¶ 17, 18).  Plaintiff informed Nurse Nichols that the medication did not work and he was experiencing double vision (*id*. ¶ 18).  Plaintiff alleges Nurse Nichols became hostile and stated that the medication worked for everyone; additionally, Nurse Nichols cancelled a medical pass for a lower bunk that Plaintiff had received from his doctor at another institution (*id*. ¶ ¶ 20, 21).  Since then, Plaintiff has submitted numerous requests for sick call, but as of a month prior to filing the instant complaint, he had received no response (*id*. ¶ ¶ 22, 24, 28–30).  Plaintiff states that his headaches have worsened and he is still experiencing double vision (*id*. ¶ ¶ 26, 31).

Plaintiff claims that Defendants have deprived him of adequate medical care in violation of the Eighth Amendment (*id*. at 8).  As relief, he seeks an injunction requiring examination by a doctor and the provision of treatment recommended by that doctor.  Plaintiff also seeks punitive damages and any other relief to which he is entitled (*id.*, attached page).

Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id*.  (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).  Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment.  *Id*. (citations omitted).  Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed.2 d 271 (1991) (internal quotation omitted)).  Second, the prison

officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements.  *Id.* at 1258.  As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 105-06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference."  Estelle, 429 U.S. at 105.  "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same.  Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care.  Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th  Cir. 1980).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical

judgments that were made.  Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff has failed to state a basis for liability as to Dr. Rummell. Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  See Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  Id. (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  Id. (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel. Alexander v. Bostic, No. 06-10216, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  See Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates

to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff alleges that Doctor Rummell is the chief medical doctor responsible for medical care at SRCI, and that Keith Gardner, a member of the medical staff, told him that he had set an appointment for Plaintiff with Doctor Rummell, but Plaintiff was never seen by Dr. Rummell (Doc. 1, Statement of Facts ¶ ¶ 25, 29).  However, these facts are insufficient to show that Dr. Rummell acted with an attitude of deliberate indifference to Plaintiff's medical needs.  Unless Plaintiff can allege sufficient facts to impose liability upon Dr. Rummell, he should drop him as a Defendant.

In amending his complaint, Plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law.  If Plaintiff determines he cannot state an actionable claim, he should file a notice of voluntary dismissal, which will result in a recommendation that this case be dismissed without prejudice.  If Plaintiff chooses to file an amended complaint, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from the complaint.  In the section entitled "Statement of Claim," Plaintiff must state what rights or statutes he contends have been violated, and he must provide reference to the facts supporting the claimed violations.  Plaintiff is advised that the amended complaint must contain all of his allegations

because once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1.      The clerk is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in section 1983 cases.  This case number should be written on the form.

2.      Plaintiff shall have **THIRTY (30) DAYS** in which to file an amended civil rights complaint, which shall be typed or clearly written and submitted on the court form.  Alternatively, Plaintiff should file a notice of voluntary dismissal within the same time.

3.      Failure to submit an amended complaint as instructed may result in a recommendation of dismissal of this action.

**DONE AND ORDERED** this 14th day of March 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**